KAREN P. HEWITT
United States Attorney
A. DALE BLANKENSHIP
Assistant United States Attorney
California State Bar No. 235960
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-6199/(619) 235-2757 (Fax)
Email: Dale.Blankenship@usdoj.gov

Attorneys for Plaintiff
United States of America

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>FELIPE ZAMORA-VILLELA(1),<br>JAVIER HERRERA-VALENCIA(2),<br>Defendants. | Criminal Case 08CR2571-JAH<br><br>DATE: September 12, 2008<br>TIME: 8:30 a.m.<br><br>**UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTIONS TO:**<br><br>**1) COMPEL DISCOVERY; AND**<br>**2) GRANT LEAVE TO FILE FURTHER MOTIONS.**<br><br>**TOGETHER WITH STATEMENT OF FACTS, MEMORANDUM OF POINTS AND AUTHORITIES** |

COMES NOW the plaintiff, United States of America, by and through its counsel, Karen P. Hewitt, United States Attorney, A. Dale Blankenship, Assistant United States Attorney, and hereby files the attached memorandum of points and authorities in response and opposition to Defendant's motions to compel discovery and grant leave to file further motions.

//

//

//

//

//

## I

## STATEMENT OF THE CASE

On August 5, 2008, a federal grand jury for the Southern District of California returned a two-count Indictment, charging Defendants, Felipe Zamora-Villela and Javier Herrera-Valenica, with bringing in illegal aliens for financial gain in violation of 8 U.S.C. § 1324(a)(2)(B)(ii), and bringing in illegal aliens without presentation and aiding and abetting, in violation of 8 U.S.C. § 1324(a)(2)(B)(iii) and 18 U.S.C. § 2. Both Defendants were arraigned on the Indictment on August 5, 2008, and entered not guilty pleas.

## II

## STATEMENT OF FACTS

### A. IMMIGRATION HISTORY

Defendant (1) Felipe Zamora-Villela is a United States citizen.

Defendant (2) Javier Herrera-Valenica is a citizen of Mexico.

### B. CRIMINAL AND ARREST HISTORY

Defendant (1) Felipe Zamora-Villela, was apprehended on August 18, 2000, for alien smuggling, no charges were filed against Defendant(1) for this offense. On February 13, 2001, Defendant(1) was convicted of hit and run in violation of Cal. Motor Vehicle Code § 20001(a) and he was sentenced to 120 days' jail and 3 years probation.

On June 12, 2002, Defendant(2) Javier Herrera-Valenica was convicted of battery on a spouse/cohabitant in violation of Cal. Penal Code §§ 242 and 243(e)(1) and he was sentenced to 180 days' custody followed by probation.

### C. INSTANT OFFENSE

On July 21, 2008, at approximately 10:30 p.m., Defendant(1) Felipe Zamora-Villela ("Zamora") made application for admission into the United States at the Otay Mesa, Port of Entry. Zamora was the driver of a 1983 Chevrolet van bearing California license plate number 6DVL490. Defendant(2) Javier Herrera-Valencia ("Herrera") was a passenger. Zamora presented a United States passport as proof of admissibility to Customs and Border Protection ("CBP") Officer Larry Hansen. Herrera presented a Permanent Resident Alien card.

Officer Hansen suspected that the United States passport was altered. He also noticed that the vehicle was not registered to either Defendant, and that the registration was only recently issued. Based upon these suspicions, Agent Hansen referred the vehicle to secondary for a more intensive inspection.

In secondary, CBP officers utilized a human detector dog to screen the vehicle. The human detector dog alerted to the dashboard area of the vehicle. CBP officers subsequently removed the dashboard and found a female, later identified as material witness Rosario Berenice Garcia-Alvarez, concealed in the dashboard area of the vehicle. Agents inspecting the vehicle discovered that the dashboard was modified to allow for a person to fit inside the dashboard area.

**1. Zamora's Statement**

On July 22, 2008, at approximately 2:33 a.m., CBP Officer Michael Prado advised Zamora of his Miranda rights in the Spanish language. Zamora waived his rights and agreed to speak to the investigating officers. Zamora stated that he previously drove the vehicle on July 14, 2008, and July 19, 2008. Zamora stated that on this occasion, he and Herrera traveled by trolley to Tijuana. At approximately 9:00 p.m., they picked up the van from a Hispanic male in the area of Colonial Libertad. Zamora stated that he was to drive the van to Gold Hills Park where he would leave the van with Herrera and catch a bus to his sister's house near the intersection of Euclid Avenue and Federal Street. Although he denied knowledge of the material witness in the dashboard, Zamora would not elaborate on the details of his trip from Tijuana to the United States.

Zamora did, however, provide information regarding his relationship to Herrera and the registered owner of the vehicle, Maria Guadalupe Tovar. Zamora stated that he has known Herrera for the past six years and that they were previously co-workers at Holiday Inn, Point Loma, California. Zamora stated that Maria Tovar asked him to cross the vehicle into the United States because she does not have proper entry documents.

**2. Herrera's Statement**

On July 22, 2008, at approximately 3:20 a.m., CBP Officer Velazquez advised Herrera of his Miranda rights. Herrera waived his rights and agreed to speak with officers. Herrera stated that one week prior to his apprehension, he bought the van from Maria Guadalupe Tovar for $1,500.00. Herrera stated that he paid $500.00 in advance pending a smog check and repairs.

Herrera stated that he has been a passenger in the van on two prior occasions while Tovar was driving. Herrera stated that on those occasions, he and Tovar traveled from Mexico into the United States at a port of entry. During each entry, Tovar presented a United States passport as an entry document. Herrera stated that he has also been a passenger in the vehicle on several occasions while traveling with Tovar in the United States. Herrera denied knowingly smuggling an undocumented alien into the United States.

**3. Material Witness' Statement**

The material witness, Rosario Berenice Garcia-Alvarez, stated that she is a citizen of Mexico without documents to enter or reside in the United States. The material witness stated that she made arrangements with a man in Tijuana, Mexico, to be smuggled into the United States for $3000.00. On the date of her apprehension, the material witness traveled from the hotel where she was staying, to a house at an unknown location. At the house, a man directed her to get into the compartment. During the drive to the port of entry, the passenger in the vehicle asked her if she was okay, and if she could breathe. The passenger also told her that there were 50 cars in front in line in front of them, waiting to make entry. The passenger also explained that they could stop and take her out of the compartment if she did not feel well. The material witness also stated that she heard the passenger tell the driver that he wanted to stop and use the restroom. The driver responded that they could not stop because they were already in the port of entry. The material witness stated that she also heard the driver and passenger speaking to the officers at the port of entry.

## III

## GOVERNMENT'S RESPONSE AND OPPOSITION TO DEFENDANT'S MOTIONS WITH POINTS AND AUTHORITIES

### A. THE GOVERNMENT WILL CONTINUE TO COMPLY WITH ALL ITS DISCOVERY OBLIGATIONS

The United States intends to fully comply with its discovery obligations under Brady v. Maryland, 373 U.S. 83 (1963), the Jencks Act (18 U.S.C. § 3500), and Rule 16 of the Federal Rules of Criminal Procedure. Thus far, the United States has issued 130 pages of discovery and one DVD. The United States anticipates that most discovery issues can be resolved amicably and informally, and has addressed Defendant's specific requests below.

**(1) The Defendant's Statements**

The United States recognizes its obligation under Rules 16(a)(1)(A) and 16(a)(1)(B) to provide to Defendant the substance of Defendant's oral statements and Defendant's written statements. The Government has produced all of Defendant's written statements that are known to the undersigned Assistant U.S. Attorney at this date and has produced all available videotapes and/or audiotapes. If the Government discovers additional oral or written statements that require disclosure under Rule 16(a)(1)(A) or Rule 16(a)(1)(B), such statements will be provided to Defendant.

The United States has no objection to the preservation of the handwritten notes taken by any of the Government's agents and officers. See United States v. Harris, 543 F.2d 1247, 1253 (9th Cir. 1976) (agents must preserve their original notes of interviews of an accused or prospective government witnesses). However, the United States objects to providing Defendant with a copy of any rough notes at this time. Rule 16(a)(1)(A) does not require disclosure of the rough notes where the content of those notes have been accurately reflected in a type-written report. See Untied States v. Williams, 291 F.3d 1180 (9th Cir. 2002); see also United States v. Brown, 303 F.3d 582, 590 (5th Cir. 2002); United States v. Coe, 220 F.3d 573, 583 (7th Cir. 2000) (Rule 16(a)(1)(A) does not require disclosure of an agent's notes even where there are "minor discrepancies" between the notes and a report). The Government is not required to produce rough notes pursuant to the Jencks Act, because the notes do not constitute "statements" (as defined 18 U.S.C. § 3500(e)) unless the notes (1) comprise both a substantially verbatim narrative of a witness' assertion, and (2) have been approved or adopted by the witness. See United States v. Alvarez, 86 F.3d 901 (9th Cir. 1996); United States v. Spencer, 618 F.2d 605, 606-07 (9th Cir. 1980). The rough notes in this case do not constitute "statements" in accordance with the Jencks Act. See United States v. Ramirez, 954 F.2d 1035, 1038-39 (5th Cir. 1992) (rough notes were not statements under the Jencks Act where notes were scattered and all the information contained in the notes was available in other forms). The notes are not Brady material because the notes do not present any material exculpatory information, or any evidence favorable to Defendant that is material to guilt or punishment. Brown, 303 F.3d at 595-96 (rough notes were not Brady material because the notes were neither favorable to the defense nor material to defendant's guilt or punishment); United States v. Ramos, 27 F.3d 65, 71 (3d Cir. 1994) (mere speculation that agents' rough notes contained Brady

evidence was insufficient). If, during a future evidentiary hearing, certain rough notes become discoverable under Rule 16, the Jencks Act, or Brady, the notes in question will be provided to Defendant.

**(2) Arrest Reports, Notes and Dispatch Tapes**

The United States has provided the Defendant with arrest reports. As noted previously, agent rough notes, if any exist, will be preserved, but they will not be produced as part of Rule 16 discovery. The United States is unaware of any dispatch tapes regarding Defendant's apprehension however it has requested with that the agency determine if any such dispatch tapes exsist.

**(3) Brady Material**

Again, the United States is well aware of and will continue to perform its duty under Brady v. Maryland, 373 U.S. 83 (1963), and United States v. Agurs, 427 U.S. 97 (1976), to disclose exculpatory evidence within its possession that is material to the issue of guilt or punishment. Defendant, however, is not entitled to all evidence known or believed to exist which is, or may be, favorable to the accused, or which pertains to the credibility of the United States' case. As stated in United States v. Gardner, 611 F.2d 770 (9th Cir. 1980), it must be noted that "the prosecution does not have a constitutional duty to disclose every bit of information that might affect the jury's decision; it need only disclose information favorable to the defense that meets the appropriate standard of materiality." Id. at 774-775 (citation omitted).

The United States will turn over evidence within its possession which could be used to properly impeach a witness who has been called to testify.

Although the United States will provide conviction records, if any, which could be used to impeach a witness, the United States is under no obligation to turn over the criminal records of all witnesses. United States v. Taylor, 542 F.2d 1023, 1026 (8th Cir. 1976). When disclosing such information, disclosure need only extend to witnesses the United States intends to call in its case-in-chief. United States v. Gering, 716 F.2d 615, 621 (9th Cir. 1983); United States v. Angelini, 607 F.2d 1305, 1309 (9th Cir. 1979).

Finally, the United States will continue to comply with its obligations pursuant to United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991).

**(4) Sentencing Information**

Defendant claims that the United States must disclose any information affecting Defendant's sentencing guidelines because such information is discoverable under Brady v. Maryland, 373 U.S. 83 (1963). The United States respectfully contends that it has no such disclosure obligation under Brady.

The United States is not obligated under Brady to furnish a defendant with information which he already knows. United States v. Taylor, 802 F.2d 1108, 1118 n.5 (9th Cir. 1986). Brady is a rule of disclosure, and therefore, there can be no violation of Brady if the evidence is already known to the defendant. In such case, the United States has not suppressed the evidence and consequently has no Brady obligation. See United States v. Gaggi, 811 F.2d 47, 59 (2d Cir. 1987).

But even assuming Defendant does not already possess the information about factors which might affect his guideline range, the United States would not be required to provide information bearing on Defendant's mitigation of punishment until after Defendant's conviction or plea of guilty and prior to his sentencing date. See United States v. Juvenile Male, 864 F.2d 641, 647 (9th Cir. 1988) ("No [Brady] violation occurs if the evidence is disclosed to the defendant at a time when the disclosure remains in value."). Accordingly, Defendant's demand for this information is premature.

**(5) Defendant's Prior Record.**

The United States has already provided Defendant with a copy of his criminal record in accordance with Federal Rule of Criminal Procedure 16(a)(1)(B). Defendant was also provided copies of the arrest reports from his prior alien smuggling apprehensions.

**(6) Proposed 404(b) Evidence**

Should the United States seek to introduce any similar act evidence pursuant to Federal Rules of Evidence 404(b) or 609, the United States will provide Defendant with notice of its proposed use of such evidence and information about such bad act at the time the United States' trial memorandum is filed.

**(7) Evidence Seized**

The United States has complied and will continue to comply with Rule 16(a)(1)(C) in allowing Defendant an opportunity, upon reasonable notice, to examine, copy and inspect physical evidence

which is within the possession, custody or control of the United States, and which is material to the preparation of Defendant's defense or are intended for use by the United States as evidence in chief at trial, or were obtained from or belong to Defendant, including photographs.

The United States, however, need not produce rebuttal evidence in advance of trial. United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984), cert. denied, 474 U.S. 953 (1985).

**(8) Tangible Objects**

The Government has complied and will continue to comply with Rule 16(a)(1)(E) in allowing Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy all tangible objects seized that is within its possession, custody, or control, and that is either material to the preparation of Defendant's defense, or is intended for use by the Government as evidence during its case-in-chief at trial, or was obtained from or belongs to Defendant. The Government need not, however, produce rebuttal evidence in advance of trial. United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984).

**(9) Evidence of Bias or Motive to Lie**

The United States is unaware of any evidence indicating that a prospective witness is biased or prejudiced against Defendant. The United States is also unaware of any evidence that prospective witnesses have a motive to falsify or distort testimony.

**(10) Impeachment Evidence**

As stated previously, the United States will turn over evidence within its possession which could be used to properly impeach a witness who has been called to testify.

**(11) Criminal Investigation of Government Witness**

Defendants are not entitled to any evidence that a prospective witness is under criminal investigation by federal, state, or local authorities. "[T]he criminal records of such [Government] witnesses are not discoverable." United States v. Taylor, 542 F.2d 1023, 1026 (8th Cir. 1976); United States v. Riley, 657 F.2d 1377, 1389 (8th Cir. 1981) (holding that since criminal records of prosecution witnesses are not discoverable under Rule 16, rap sheets are not either); cf. United States v. Rinn, 586 F.2d 113, 118-19 (9th Cir. 1978) (noting in dicta that "[i]t has been said that the Government has no discovery obligation under Fed. R. Crim. P. 16(a)(1)(C) to supply a defendant with the criminal records of the Government's intended witnesses.") (citing Taylor, 542 F.2d at 1026).

The Government will, however, provide the conviction record, if any, which could be used to impeach witnesses the Government intends to call in its case-in-chief. When disclosing such information, disclosure need only extend to witnesses the United States intends to call in its case-in-chief. United States v. Gering, 716 F.2d 615, 621 (9th Cir. 1983); United States v. Angelini, 607 F.2d 1305, 1309 (9th Cir. 1979).

**(12) Evidence Affecting Perception, Recollection, Communication or Truth-Telling**

The United States is unaware of any evidence indicating that a prospective witness has a problem with perception, recollection, communication, or truth-telling.

**(13) Witness Addresses**

The United States has already provided Defendant with the reports containing the names of the agents involved in the apprehension and interviews of Defendant. A defendant in a non-capital case, however, has no right to discover the identity of prospective Government witnesses prior to trial. See Weatherford v. Bursey, 429 U.S. 545, 559 (1977); United States v. Dishner, 974 F.2d 1502, 1522 (9th Cir 1992) (citing United States v. Steel, 759 F.2d 706, 709 (9th Cir. 1985)); United States v. Hicks, 103 F.23d 837, 841 (9th Cir. 1996). Nevertheless, in its trial memorandum, the United States will provide Defendant with a list of all witnesses whom it intends to call in its case-in-chief, although delivery of such a witness list is not required. See United States v. Discher, 960 F.2d 870 (9th Cir. 1992); United States v. Mills, 810 F.2d 907, 910 (9th Cir. 1987).

The United States objects to Defendant's request that it provide a list of every witness to the crimes charged who will not be called as a Government witness. "There is no statutory basis for granting such broad requests," and a request for the names and addresses of witnesses who will not be called at trial "far exceed[s] the parameters of Rule 16(a)(1)(C)." United States v. Hsin-Yung, 97 F. Supp.2d 24, 36 (D. D.C. 2000) (quoting United States v. Boffa, 513 F. Supp. 444, 502 (D. Del. 1980)). The United States is not required to produce all possible information and evidence regarding any speculative defense claimed by Defendant. Wood v. Bartholomew, 516 U.S. 1, 6-8 (1995) (per curiam) (holding that inadmissible materials that are not likely to lead to the discovery of admissible exculpatory evidence are not subject to disclosure under Brady).

**(14) Witnesses Favorable to the Defendant**

As stated earlier, the United States will continue to comply with its obligations under Brady and its progeny. At the present time, the United States is not aware of any witnesses who have made an "arguably favorable statement concerning the defendant or who could not identify him or who w[ere] unsure of his identity, or participation in the crime charged."

**(15) Statements Relevant to the Defense**

To reiterate, the United States will comply with all of its discovery obligations. However, "the prosecution does not have a constitutional duty to disclose every bit of information that might affect the jury's decision; it need only disclose information favorable to the defense that meets the appropriate standard of materiality." Gardner, 611 F.2d at 774-775 (citation omitted).

**(16) Jencks Act Material**

The Jencks Act, 18 U.S.C. § 3500, requires that, after a Government witness has testified on direct examination, the Government must give the Defendant any "statement" (as defined by the Jencks Act) in the Government's possession that was made by the witness relating to the subject matter to which the witness testified. 18 U.S.C. § 3500(b). A "statement" under the Jencks Act is (1) a written statement made by the witness and signed or otherwise adopted or approved by him, (2) a substantially verbatim, contemporaneously recorded transcription of the witness's oral statement, or (3) a statement by the witness before a grand jury. 18 U.S.C. § 3500(e). If notes are read back to a witness to see whether or not the government agent correctly understood what the witness was saying, that act constitutes "adoption by the witness" for purposes of the Jencks Act. United States v. Boshell, 952 F.2d 1101, 1105 (9th Cir. 1991) (citing Goldberg v. United States, 425 U.S. 94, 98 (1976)). While the United States is only required to produce all Jencks Act material after the witness testifies, the United States plans to provide most (if not all) Jencks Act material well in advance of trial to avoid any needless delays.

**(17) Giglio Information**

As stated previously, the United States will comply with its obligations pursuant to Brady v. Maryland, 373 U.S. 83 (1963), the Jencks Act, United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991), and Giglio v. United States, 405 U.S. 150 (1972).

**(18) <u>Agreements Between the Government and Witnesses</u>**

The United States has not made or attempted to make any agreements with prospective Government witnesses for any type of compensation for their cooperation or testimony.

**(19) <u>Informants and Cooperating Witnesses</u>**

At this time, the United States is not aware of any confidential informants or cooperating witnesses involved in this case. The United States must generally disclose the identity of informants where (1) the informant is a material witness, or (2) the informant's testimony is crucial to the defense. Roviaro v. United States, 353 U.S. 53, 59 (1957). If there is a confidential informant involved in this case, the Court may, in some circumstances, be required to conduct an in-chambers inspection to determine whether disclosure of the informant's identity is required under Roviaro. See United States v. Ramirez-Rangel, 103 F.3d 1501, 1508 (9th Cir. 1997). If the United States determines that there is a confidential informant somehow involved in this case, it will either disclose the identity of the informant or submit the informant's identity to the Court for an in-chambers inspection.

In this case, the UPS driver provided information to Border Patrol Agents regarding his observation of Defendant's alien smuggling activities, prior to Defendant's apprehension. The Government does not know at this time if the Border Patrol Agents obtained his name of identification.

**(20) <u>TECS Reports</u>**

Defendants are not entitled to TECS reports. Prior border crossings do not fall within the scope of 404(b) unless offered for a purpose consistent with 404(b).

**(21) <u>Expert Summaries</u>**

The Government will comply with Rule 16(a)(1)(G) and provide Defendants with a written summary of any expert testimony that the Government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial. This summary shall include the expert witnesses' qualifications, the expert witnesses opinions, the bases, and reasons for those opinions.

**(22) <u>Residual Request</u>**

The Government has already complied with Defendants' request for prompt compliance with its discovery obligations. The Government will comply with all of its discovery obligations, but objects to the broad and unspecified nature of Defendants' residual discovery request.

**B. THE GOVERNMENT DOES NOT OPPOSE LEAVE TO FILE FURTHER MOTIONS, SO LONG AS THEY ARE BASED ON NEW EVIDENCE**

The United States does not object to the granting of leave to allow Defendant to file further motions as long as the additional motions are based on newly discovered evidence or discovery provided by the Government subsequent to the instant motion at issue.

**IV.**

**CONCLUSION**

For the foregoing reasons, the United States respectfully requests that Defendant's motions except where not opposed, be denied.

DATED: September 8, 2008.

Respectfully Submitted,

KAREN P. HEWITT
United States Attorney

S/ A. Dale Blankenship
A. DALE BLANKENSHIP
Assistant United States Attorney
Attorneys for Plaintiff
United States of America
Email: Dale.Blankenship@usdoj.gov

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>FELIPE ZAMORA-VILLELA(1),<br>JAVIER HERRERA-VALENCIA(2),<br><br>Defendant. | Criminal Case No. 08CR2571-JAH<br><br>**CERTIFICATE OF SERVICE** |

IT IS HEREBY CERTIFIED THAT:

I, A. DALE BLANKENSHIP, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of **GOVERNMENT'S RESPONSE AND OPPOSITION TO DEFENDANT'S MOTIONS TO:**

**1) COMPEL DISCOVERY; AND**

**2) GRANT LEAVE TO FILE FURTHER MOTIONS.**

on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

Erica Zunkel, Esq., Erica_Zunkel@fd.org

I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:

**None**

the last known address, at which place there is delivery service of mail from the United States Postal Service.

I declare under penalty of perjury that the foregoing is true and correct. Executed on September 8, 2008.

s/ A. Dale Blankenship

A. DALE BLANKENSHIP